UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**VALDIR XAVIER, ET AL.**  CIVIL ACTION

**VERSUS**  NO. 06-491 c/w 06-7084

**BELFOR USA GROUP, INC**  SECTION "A"(3)

<u>**ORDER AND REASONS**</u>

Before the Court is plaintiffs' motion to proceed as a collective action. Rec. Doc. 172. The motion is opposed. Rec. Doc. 278. For the following reasons, the motion is **denied**.

**I.  BACKGROUND**

In October 2006, plaintiffs Orestes Daniel Obando and Adan Gonzalez filed this action alleging violations of their rights under the Fair Labor Standards Act, 29 USC §§ 201, *et seq*, while working on projects along the Gulf Coast after Hurricane Katrina. Plaintiffs filed suit individually and on behalf of all those similarly situated requesting certification as a collective action pursuant to 29 USC § 216(b), judgment declaring that the defendants violated the FLSA, and an award of damages encompassing the amount of unpaid wages due each plaintiff, plus an award of liquidated damages, attorneys fees and costs. Plaintiffs named Belfor USA Group, Inc., and Ticos Construction Company, LLC as defendants. The action as originally filed encompassed workers who were not paid overtime post-Hurricane Katrina on Gulf Coast projects only.

As filed, plaintiffs' Complaint was duplicative of another action pending in this Court entitled *Xavier v. Belfor USA Group, Inc*., bearing civil action number 06-491 because both actions sought recovery for overtime worked, but not paid, in areas around the Gulf Coast after Hurricane Katrina on Belfor projects. Thus, the named plaintiffs, after leave of court was granted, amended

the original complaint.

The amended complaint expands the FLSA collective action to all persons similarly situated "nationwide" who performed manual labor on Belfor projects at any time within the three (3) years prior to the filing of the initial complaint and who did not receive overtime compensation. Rec. Doc. 87 at p. 2. In addition, the amended complaint added named plaintiffs from Illinois , California and Pennsylvania who allege that they were denied overtime under the Fair Labor Standards Act as well as under the respective state's wage and labor laws. The originally named Louisiana plaintiffs also amended their claims to assert Louisiana state law causes of action for violations of Louisiana labor and wage law. Plaintiffs also requested class certification under Federal Rule of Civil Procedure 23. Rec. Doc. 87.

With the consent of the defendants, the complaint was amended a third time. The third amended complaint named plaintiffs from Ohio who allege that they were denied overtime in violation of the Fair Labor Standards Act as well as in violation of Ohio's wage and labor laws . Rec. Doc. 104 at p. 3. The third amended complaint reiterated the demand to certify this action as a nationwide collection action pursuant to 28 USC § 216(b) and to certify the state law claims as a class action under FRCP 23. In essence, plaintiffs' complaints allege ten (10) state law class action claims concerning various employment practices in the respective states in addition to the collective action claim. The Court has denied plaintiffs' motion to certify the state class actions under Federal Rule of Civil Procedure 23. Rec. Doc. 240.

After ruling on the motion to certify class action, the Court ordered the parties to set the motion to certify as a collective action for hearing. That motion to certify under 28 USC § 216(b)

is currently before the Court. Plaintiffs request that the Court collectively certify the action to include:

> All individuals who worked or are working for Belfor USA performing manual labor either directly or indirectly through various subcontractors in various projects throughout the United States over the last three years who were eligible for overtime pay pursuant to the FLSA, 29 USC § 207 and who did not receive overtime pay.

Plaintiff argues that under the lenient standard set for certifying collective actions, they have met their burden in proving that the named plaintiffs and the potential opt-in plaintiffs are similarly situated. Belfor counters that the facts of this case require utilization of the FRCP 23 factors to determine whether certification should go forward rather than the lenient *Lusardi* approach. Further, Belfor argues that this action should not be collectively certified because plaintiffs have failed in meeting their burden of proof to show that plaintiffs are similarly situated to others nationwide. Finally, Belfor argues that certification is improper as it is not the employer of any of the named plaintiffs or the opt-in plaintiffs.

## II.   LAW AND ANALYSIS

### A.   *Lusardi* or *Shushan*.

Title 29 of the United States Code, Section 216(b) creates a cause of action for employees against employers, who violate the overtime compensation requirements. Section 216(b) provides, in pertinent part:

> An action ... may be maintained ... by any one or more employees for and on behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and

such consent is filed in the court in which such action is brought.

Section 216(b) establishes an "opt-in" scheme under which plaintiffs must affirmatively notify the court of their intention to become parties to the suit. *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212 (5th Cir.1995). District Courts have discretion in deciding whether to order notice to potential plaintiffs. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170-71, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989); *Villatoro v. Kim Son Rest., L.P.*, 286 F.Supp.2d 807, 809 (S.D.Tex.2003).

Courts recognize two methods to infer collectivity and, therefore, whether to authorize notice to similarly-situated employees advising them of their right to join an FLSA collective action. *Mooney*, 54 F.3d at 1213-15. These methods are the two-step *Lusardi* approach and the class action *Shushan* approach. *Id.; Shushan v. Univ. of Colo. at Boulder*, 132 F.R.D. 263 (D.Colo.1990); *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J.1987). The Fifth Circuit has found it unnecessary to determine which method is most appropriate. *Mooney*, 54 F.3d at 1213-15. However, "[i]t is clear that the two-step ad hoc [*Lusardi*] approach is the preferred method for making the similarly situated analysis and that the similarly situated standard does not incorporate Rule 23 requirements." *Basco v. Wal-Mart Stores Inc.*, 2004 WL 1497709, *4 (E.D.La. 2004); *See also LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 288 (5th Cir. 1975) (finding a fundamental difference between Rule 23 class actions and FLSA collective actions and noting that it is crystal clear that § 216(b) precludes pure Rule 23 class actions in FLSA suits).

The parties initially dispute which of these two standards are applicable to this case. The *Lusardi* approach is the more generally accepted method of analysis and has been routinely applied

by courts in this Circuit.  See *LaChapelle,* 513 F.2d at 288; *Neagley v. Atascosa County EMS*, 2005 WL 354085 (W.D. Tex. 2005); *England v. New Century Financial Corporation*, 370 F. Supp. 2d 504, 511 (M.D. La. 2005); *Villatoro v. Kim Son Restaurant, L.P.,* 286 F. Supp. 2d 807 (S. D. Tex. 2003); *Donohue v. Francis Services, Inc.,* 2004 WL 1161366 (E.D. La. 2004); *Basco v. Wal-Mart Stores, Inc., et al.* 2004 WL 1497709 (E.D. La. 2004)(stating that the two-step *Lusardi* approach is the preferred method for making the similarly situated analysis and that the standard does not incorporate Rule 23 requirements); *Alix v. Shoney's Inc*., 1997 WL 66771 (E.D. La. 1997)(finding that plaintiffs could not maintain an FLSA collective action under FRCP 23); *Crain v. Helmerich Payne International Drilling Company*, 1992 WL 91946 (E.D. La. 1992)(stating that the procedural prerequisites for Rule 23 certification are simply inapplicable in the FLSA setting).

After review of the arguments and the record, the Court finds no reason to depart from the long-line of precedent finding that *Lusardi* is the preferred method for analyzing motions to certify collective actions under Section 216 (b).  The Court will therefore apply that method to the merits of plaintiffs' motion.

**B.    Certification**.

Under the *Lusardi* approach, the district court approaches the "similarly situated" inquiry via a two-step analysis.  *Mooney*, 54 F.3d at 1213.  The first step is the "notice stage" in which the district court decides whether to issue notice to potential class members.  *Id.* at 1213-1214.  The court's decision is usually based only on the pleadings and any affidavits that have been submitted. *Id*. Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in conditional certification of a representative class  where potential

class members receive notice and the opportunity to opt-in. *Id.* at 1214. The lenient standard requires only substantial allegations that potential members "were together the victims of a single decision, policy, or plan...." *Id.* at n. 8 (citations omitted); *Theissen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1102-03 (10th Cir.2001). A factual basis for the allegations is needed to satisfy this first step. *See Hall v. Burk, No.*,2002 WL 413901, at *3 (N.D. Tex. 2002). "Unsupported assertions of widespread violations are not sufficient to meet Plaintiff's burden." *Haynes v. Singer Co., Inc.*, 696 F.2d 884, 887 (11th Cir. 1983) . Courts require "some identifiable facts or legal nexus [that] bind the claims so that hearing the cases together promotes judicial efficiency." *Barron v. Henry County Sch. Sys.*, 242 F.Supp.2d 1096, 1103 (M.D. Ala.2003). See also *Simmons v. T-Mobile USA, Inc.*, 2007 WL 210008 (S.D. Tex. 2007)(stating that plaintiff must allege a common policy or plan and make a factual showing sufficient to demonstrate that he or she and potential plaintiffs together were victims of a common policy or plan that violated the law)(citations omitted).

Although the "similarly situated" standard is lenient at the notice stage, general allegations that the employer violated the FLSA are insufficient. Even at the notice stage, "a showing that employees are 'similarly situated' entails more than just a matching of job responsibilities. The requirement that proposed class members be 'similarly situated' to the named plaintiffs ensures that the collective action promotes the 'efficient resolution of common issues of law and fact arising from the same alleged discriminatory activity.'" *Hunter v. Sprint Corp.*, 346 F.Supp.2d 113, 119 (D.D.C. 2004). "A court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *England v. New Century Fin. Corp.*, 370 F.Supp.2d 504, 507 (M.D.La.2005). "[T]he mere fact that violations occurred cannot be enough to establish similarity, as that would not

ultimately be sufficient to establish a pattern and practice without a showing that the violations were more than sporadic occurrences." *Barron*, 242 F.Supp.2d at 1104

Whether employees are "similarly situated" for purposes of the FLSA is determined in reference to their "job requirements and with regard to their pay provisions." *Lima v. International Catastrophe Solutions, Inc*., 493 F.Supp.2d 793, 798 (E.D. La. 2007)(citing *Dybach v. Florida Dep't of Corr*., 942 F.2d 1562, 1567-68 (11th Cir.1991)). A plaintiff need only demonstrate a reasonable basis for the allegation that a class of similarly situated persons may exist. *Lima,* 493 F. Supp. at 798 (citing *Grayson v. K Mart Corp*., 79 F.3d 1086, 1097 (11th Cir.1996)). However, at least some evidence beyond unsupported factual assertions of a single decision, policy, or plan should be presented. *Lima*, 493 F. Supp. at 798 (citing *H & R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D.Tex.1999)).

"Similarly situated" does not mean identically situated. *Crain v. Helmerich and Payne Intern'l Drilling Co.*, 1992 WL 91946 (E.D.La.1992)(citations omitted). Rather, an FLSA class determination is appropriate when there is "a demonstrated similarity among the individual situations ... some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice]." *Helmerich*, 1992 WL 91946 *4-5 (quoting *Heagney v. European American Bank*, 122 F.R.D. 125, 127 (E.D.N.Y. 1988)). Thus, a court can foreclose a plaintiff's right to proceed collectively only if "the action relates to specific circumstances personal to the plaintiff rather than any generally applicable policy or practice. " *Helmerich*, 1992 WL 91946 *5 *(*quoting *Burt v. Manville Sales Corp*., 116 F.R.D. 276, 277 (D.Colo.1987)). If a court conditionally certifies a class, the action proceeds as a collective action during discovery. *Mooney,* 54 F.3d at 1214.

The second stage of inquiry typically occurs when discovery is largely complete and the defendant moves to "decertify" the conditionally-certified class. *Id.* At that point, the court makes a factual determination as to whether there are similarly-situated employees. *Id.* If the district court finds that the claimants are similarly situated, the collective action may proceed. *Mooney*, 54 F.3d at 1214. If the court decertifies the class, the opt-in plaintiffs are dismissed without prejudice and the original plaintiffs proceed on their individual claims. Plaintiffs bear the burden of establishing that they are similarly situated to the proposed class. *Basco,* 2004 WL 1497709 *5 (citations omitted).

In deciding whether the Plaintiffs have met the requirements of the two-step *Lusardi* approach, the Court is mindful that "it, like practicing attorneys, has a responsibility to refrain from stirring up unwarranted litigation." *Lentz v. Spanky's Restaurant II, Inc.,*2007 WL 1628853 *3. Further, employers should not be unduly burdened by a frivolous fishing expedition conducted by the plaintiffs at the defendant's expense. *Lentz,* 2007 WL 1628853 at * 3. Finally, certification is not automatic. While the standard at the notice stage is not particularly stringent, it is by no means automatic. *Lima,*  493 F.Supp.2d at 798 (citing *Hipp v. Liberty National Life Ins. Co.*, 252 F.3d 1208, 1213 (11th Cir.2001)); See also *Badgett v. Texas Taco Cabana, LP,* 2006 WL 2934265*2 (S.D. Tex. 2006) (stating that of 115 FLSA actions filed in that district in 2005 purporting to be collective actions, only 17 were certified as such).

This case is at stage one or at the notice stage of the *Lusardi* analysis. To prevail at the notice stage, the named plaintiffs must have substantial allegations that they and potential opt-in members were together the victims of a single decision, policy, or plan that violated the law. Plaintiffs have failed to meet the similarly situated threshold.

The named plaintiffs rely on affidavits on potential opt-ins as evidence that they and the opt-ins were the victims of a single Belfor decision, policy or plan that violated the law. The Court has already ruled that these affidavits are unreliable and have stricken them from the record. Accordingly, the affidavits are not considered. However, even if the Court were to consider the affidavits this action is not proper for collective certification.

First, plaintiffs have failed to show that they as potential opt-ins were together a part of a common policy, plan or decision implemented by defendant Belfor that violated the law. In support, plaintiffs rely upon Belfor's use of subcontractors as labor providers for its projects. Without providing any evidentiary support, plaintiffs alleged that Belfor's relationship was not a true subcontracting relationship wherein a general contractor contracts with another entity to independently perform specific tasks on a project. Rather, plaintiffs propose that Belfor used the subcontractors as "merely labor brokers who provided unskilled manpower that Belfor itself supervised, directed and controlled throughout all phases of the project for which they were hired, including providing uniforms and training." Rec. Doc. 172, p. 11. Plaintiffs' position is that since Belfor's relationship with the employee was that of an employer then it should have paid overtime and its "practice" of treating workers as employees but expecting its subcontractors to pay the overtime due was uniform on all projects, with all plaintiffs and with all subcontractors. Plaintiffs allege Belfor uses these subcontractors to avoid paying overtime premiums.

Plaintiffs rely upon statements provided in the answers of two of Belfor's subcontractors in this case (Expro Services, Inc, and Construction Management Services, USA, LLC) which provide, in sum, that "Belfor controlled the plaintiff workers and their performance." Plaintiffs also rely upon a complaint by Belfor against a different subcontractor filed in a Michigan Court in which

9

Belfor admits it uses temporary labor providers to supply laborer and the answer in that action which provides that the subcontractor was to serve merely as a labor supplier and to manage the payment of the laborers with Belfor having direct control and supervision over them and their work. Further, plaintiffs rely upon the Master Subcontract Agreement between Belfor and Ticos Construction, LLC (a defendant and subcontractor in this case) which provides that Ticos is a "Labor Supply Contractor" and which provides that the "subcontractor agrees to furnish laborers...necessary to complete all work as set forth in the Work Order." They also rely upon the answers by Construction Management and Guaranteed Fence and Gate, LLC (two other Belfor subcontractors) to the third party demands in this matter which state that Belfor refused to authorize any overtime payments to the workers but charged the owners of the properties being worked the full overtime rates as part of "common billing practice." Finally, plaintiffs argue that because Belfor is paying the settlements in the *Xavier* action and because many of the named and opt-in plaintiffs in that action will also be part of this nationwide action, if certified, that Belfor has admitted responsibility for failure to pay the overtime premium required.

     Plaintiffs' evidence shows only that Belfor used subcontractors to supply labor for it on projects because Belfor does not have a directly employed labor force. The submitted evidence does not, as plaintiffs suggest, show that Belfor had some plan or policy wherein it would avoid paying overtime payments by subcontracting out labor. In fact, the Master Service Agreement relied upon by plaintiffs provides, among other things, that the "subcontractor agrees to furnish all labor, materials, tools, supervision, and equipment to perform all work necessary to complete the work set forth in the Work Order" and that the "subcontractor shall comply with all federal, state and local laws, codes, regulations, safety, standards, ordinances and/or statutes (including minimum wage),

hire and/or use only employees or subcontractors who are verified as currently eligible to work in the United States." See Exhibit "3" attached to Rec. Doc. 172. This provision defeats plaintiffs' argument. These provisions show that Belfor was cognizant of the wage and labor laws and expected those it subcontracted with to fully comply with those laws. Further, the plaintiffs provide only conclusory allegations and submit no evidence demonstrating that Belfor controlled the work of the laborers such that it can be held to be the direct employer of the named plaintiffs or the potential opt-in plaintiffs. Finally, reliance on allegations made by the subcontractors in defense to demands made against them by Belfor is inappropriate. Belfor filed suit against those subcontractors alleging, among other things, that they failed to comply with their respective contracts by not paying the overtime due. In defense, those subcontractors are claiming it was Belfor's responsibility to pay and not theirs. While plaintiffs claim these allegations are admissions by the subcontractors, nothing in those allegations in support of the subcontractors' defenses can be construed as an admission by Belfor that it is legally responsible for the subcontractors alleged misconduct.

Further, the named plaintiffs have failed to show how they are similarly situated to potential opt-in plaintiffs nationwide. While the named plaintiffs and potential opt-in plaintiffs may all have been denied overtime payments, the similarity ends there. The action taken by each of the subcontractors at each Belfor job site would have to be reviewed and individually analyzed to determine, *inter alia*, whether a violation occurred and whether Belfor would be liable for such a violation. During the time period at issue, Belfor utilized 2100 subcontractors in at least forty-four states at different job sites. Exhibit "A" attached to Rec. Doc. 278. Each subcontractor signed separate agreements with Belfor and had a different business relationship with Belfor. Exhibit "A" attached to Rec. Doc. 278. Additionally, during the time period at issue, Belfor undertook projects

11

involving from less than five workers to projects including in excess of two thousand workers. Exhibit "B" attached to Rec. Doc. 278. Belfor has shown that the specific circumstances of each worker is personal to his or her job experience with each of the subcontractors. As stated *supra*, the named plaintiffs have not shown that their circumstances and experiences with the payroll practices of the specific subcontractor were similar to the payroll practices of the remaining workers who worked for those 2100 or so subcontractors who contracted with Belfor. There is simply no evidence of a generally applicable policy or practice and the individual circumstance of each worker is too particularized to warrant collective certification nationwide.

Plaintiffs rely heavily on the *Lima* case, but that case does not support their position. *Lima v. International Catastrophe Solutions, Inc.*, 493 F. Supp. 2d 793, 800 (E.D. La. 2007) was certified as a collective action on a limited basis. The plaintiffs requested and the Court granted certification for workers who worked for only two contractors performing manual labor services directly or indirectly through a subcontractor in the Gulf Coast area post-Hurricane Katrina for a limited period of time. The *Lima* court was presented with a limited well-defined class who were similarly situated with the named plaintiffs. Unlike the *Lima* case, the plaintiffs here have failed to show that they and the opt-in plaintiffs were the victims of a common unlawful policy or practice and have not shown that they are similarly situated. Further, plaintiffs do not designate the subcontractors at issue nor the applicable job sites and they do not describe the specific job at each job site which is at issue. Rather they broadly request that "all individuals who worked or are working for Belfor USA performing manual labor either directly or indirectly through various subcontractors in various projects throughout the United States over the last three years who were eligible for overtime pay pursuant to the FLSA, 29 USC § 207 and who did not receive overtime" be certified into one action.

The Court cannot make such a certification based upon the showing made and given that the facts of this case would require too particularized and individualized an analysis of each worker's situation. The claims of plaintiffs are better tried as individual cases based upon the conditions at each different job site or by subcontractor. See *England v. New Century Financial Corp.,* 70 F. Supp. 2d 504 (M.D. La. 2005); *Simmons v. T-Mobile,* 2007 WL 210008 (S.D. Tex. 2007).

### III.   CONCLUSION

For the reasons stated herein**,** the named plaintiffs have not established a sufficient basis for the Court to conclude that this action should be collectively certified under Section 216(b) of the Fair Labor Standards Act.

Accordingly,

**IT IS ORDERED** that plaintiffs' Motion to Certify this Action as a Collective Action pursuant to Section 216 (b) of the Fair Labor Standards Act is **DENIED.**

September 22, 2008

_____
**UNITED STATES DISTRICT JUDGE
JAY C. ZAINEY**