UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
_____

| | |
|---|---|
| VALDIR XAVIER, et al,<br><br>  Plaintiffs,<br><br>V<br><br>BELFOR USA GROUP, INC.<br><br>  Defendant. | CIVIL ACTION<br>NO. 06-0491; c/w 06-8704, 08-3736 & 08-949<br><br>**(Reference to 06-0491, 08-3736 only)**<br><br>Section "A"<br>HONORABLE JAY C. ZAINEY<br><br>MAG. DIV. (3)<br>MAG. JUDGE DANIEL E. KNOWLES III |

**_OBANDO_ & _NAVA_ PLAINTIFFS COMBINED RESPONSE IN OPPOSITION TO BELFOR'S MOTIONS TO COMPEL APPEARANCES AND FOR IMPOSITION OF SANCTIONS**

## I.   Introduction

This document is filed on behalf of the *Obando* and *Nava* Plaintiffs in response to the following pleadings:

| Docket | Date | Title |
|---|---|---|
| 573 | 2009-08-18 | Belfor's Motion to Compel Appearances of Agnelio Jurado and Adaildo Pereira |
| 585 | 2009-09-01 | Order Granting Motion to Compel Appearances of Agnelio Jurado and Adaildo Pereira |
| 615 | 2009-09-15 | Motion to Compel Appearances of *Obando* Plaintiffs |
| 616 | 2009-09-15 | Motion for Discovery Sanctions against Sergio Ferreira De Oliveira and Rosy Martinez |
| 617 | 2009-09-15 | Motion for Discovery Sanctions against Agnelio Jurado, Adaildo Pereira and Elio Escobar. |

The *Nava* and *Obando* Plaintiffs request the Court to set aside its September 1, 2009 Order and to deny Belfor's Motions to Compel Appearances and for Discovery Sanctions.

1

## II.     Pertinent Background Facts

### A.     The *Obando* Case

The *Obando* Named Plaintiffs filed a FLSA collective action in 2006 alleging that Belfor had not paid them and others similarly situated as members of Belfor's traveling manual labor force mandatory overtime. The *Obando* Plaintiffs traveled from state to state as members of the Belfor traveling labor force, and the alleged non-payment occurred in various states. Since the *Obando* Plaintiffs' motion for conditional certification was denied, the *Obando* Named Plaintiffs and others who opted into that case are currently proceeding as individual Plaintiffs against Belfor.

Since filing their Complaint, some of the remaining 57 *Obando* Plaintiffs have changed their residences to different states and countries. Belfor has scheduled and taken discovery depositions of some of the *Obando* Plaintiffs who live in Louisiana, and Belfor is now demanding that all *Obando* Plaintiffs appear in Louisiana for their discovery depositions despite their financial or practical inability to do so, or their availability in their home states and countries for telephonic depositions.

#### 1.     *Obando* Plaintiff Sergio Ferreira de Oliveira

Belfor scheduled the discovery deposition of *Obando* Plaintiff Sergio Ferriera de Oliveira in New Orleans, LA during the week of September 9, 2009. However, Mr. Oliveira had returned to his home in Brazil, was unable to secure the necessary documents and funding to be able to travel to New Orleans, LA,

2

and hence did not appear for his deposition. On September 15, 2009, Belfor filed its Motion to Compel Appearances of the *Obando* Plaintiffs in Louisiana. However, neither Mr. Oliveira is not financially or practically able to travel to Louisiana, and there are alternative and less costly methods for Belfor to secure any information sought from Mr. Oliviera.

    **B.**    **The *Nava* Case**.

The *Nava* Named Plaintiffs filed a FLSA collective action in 2008 alleging that Belfor had not paid them and others similarly situated as members of Belfor's traveling manual labor force mandatory overtime. The *Nava* Plaintiffs traveled from state to state as members of the Belfor traveling labor force, and the alleged non-payment occurred in various states. Discovery for purposes of Plaintiffs' motion for conditional certification is presently occurring.

Since filing their Complaint, some of the *Nava* Plaintiffs have changed their residences to different states and countries. Belfor has scheduled and taken discovery depositions of some of the *Nava* Named Plaintiffs in Louisiana, and also voluntarily traveled to Charlotte, NC, to take the discovery depositions of *Nava* Named Plaintiffs now residing in that city. However, Belfor is now demanding that all the *Nava* Named Plaintiffs appear in Louisiana for discovery depositions despite their financial or practical inability to do so, or their availability in their home states and countries for telephonic depositions.

3

### 1.     *Nava* Plaintiffs Adaildo Pereira and Agnelio Jurado

Belfor scheduled the discovery depositions of *Nava* Plaintiffs Adaildo Pereira and Agnelio Jurado.  However, they were unable to attend their depositions because they are living outside the United States, do not have sufficient travel funds, and could not secure the necessary visas and travel documents in time.  Belfor was unwilling to take their depositions by telephone, and on August 18, 2009 filed a motion to compel their appearances in Louisiana [Docket No. 573]. Plaintiffs intended to oppose this motion; however, due to confusion over which Plaintiffs were being referred in the motion, the *Nava* Plaintiffs' counsel inadvertently failed oppose this motion.[1]

On September 1, 2009, the Court entered an order [Docket No. 585] on Belfor's August 18, 2009 Motion to Compel (erroneously unopposed) requiring Mr. Pereira and Mr. Jurado to appear in Louisiana for their depositions by September 18, 2009.  However, they were unable to do so, because they are still living outside the United States, still do not have sufficient travel funds, and still could not secure the necessary visas and travel documents in time.

### 2.     **Plaintiff Elio Escobar**

*Nava* Named Plaintiff Elio Escobar was scheduled to have his deposition

---

[1] Plaintiffs' counsel mistakenly thought the subject motion was the motion to dismiss *Nava* Named Plaintiffs Delmy Reyes, Celia Sacoto and Ricardo Manuel, which the *Nava* Plaintiffs' attorneys did not oppose because they had lost all contact with those three individuas.  The order dismissing Mr. Reyes, Ms. Sacoto and Mr. Manuel was entered on the same day as the order on the inadvertently unopposed Motion to Compel the Appearance of Mr. Pereira and Mr. Jurado.

taken where he resides, in Charlotte, NC, by agreement of Belfor's counsel. Mr. Escobar had been in regular contact with the *Nava* Plaintiffs' attorneys, but just prior to his scheduled deposition his cell phone was stolen. In an effort to contact him, letters were sent and telephone calls made to other class members in an attempt to contact him. These efforts were successful and Mr. Escobar contacted the *Nava* Plaintiffs' attorneys on the day of, but after the time scheduled for, his deposition.

Mr. Escobar appeared the day after his scheduled deposition, and stayed until Belfor's attorneys completed their discovery deposition of *Nava* Named Plaintiff Lourdes Garces, prepared pursuant to agreement with Belfor's counsel to give the deposition at that time that he had missed the day before. Mr. Escobar indicated that he was willing to stay all night if necessary to be deposed however, after completing the deposition of Lourdes Garces, Belfor's counsel refused to even start Mr. Escobar's deposition.

On September 15, 2009 Belfor filed a motion for sanctions against Mr. Escobar because he inadvertently failed to appear at the time and on the day of his originally scheduled deposition in Charlotte, NC.

**II.     The Court Is Requested To Set Aside Its Order Requiring The Appearance Of *Nava* Plaintiffs Agnelio Jurado And Adaildo Pereira In New Orleans, LA, And Permit Them To Contest Belfor's August 18, 2009 Motion.**

Counsel for *Nava* Named Plaintiffs Agnelio Jurado and Adaildo Pereira inadvertently failed to contest Belfor's August 18, 2009 Motion to Compel,

5

resulting in the Court's September 1, 2001 compelling their appearance in Louisiana for their depositions by September 18, 2009 or face dismissal.

*Nava* Named Plaintiff Agnelio Jurado has been in contact with his attorneys since the time that he filed his consent to sue and is presently living in Ecuador. He has no financial means to travel to the United States to be deposed, at least in part because of Belfor's failure to pay the wages due him. While Belfor has asserted that the *Nava* Plaintiffs' attorneys have only agreed to produce plaintiffs for depositions in their home countries, this is not the case, as the option of depositions by telephone or some other form of electronic communications was offered as well. Belfor refused these options.

**III.   Defendant's Motions To Compel Appearances Should Be Denied, United States Resident Plaintiffs Should Be Required To Be Deposed Only In Locations Convenient To Both Parties And / Or In The States In Which They Reside Or Regularly Conduct Business, And Plaintiffs Residing In Other Countries Should Be Required To Be Deposed Only Where They Reside, Or By Means Of Written Questions Or Telephonic Communication.**

While the general rule and practice is to require a plaintiff to be deposed in the forum he or she has selected, class action and collective actions provide special situations where courts have allowed the depositions of plaintiffs to be taken by telephone or by other less costly means, such as by written interrogatories. Such situations occur when (1) compelling in-person depositions would be burdensome or cause the plaintiff undue hardship; (2) the plaintiff, for all practical purposes, had no choice in selecting the forum where the suit was

filed; or (3) it would be simpler and fairer to take the deposition at another location, or to utilize another form of discovery. See Generally C. Wright, A. Miller and R. Marcus., 8A Federal Practice & Procedure § 2112 (2d ed. 1994). The Named Plaintiffs who are foreign nationals and are now residing in their home countries satisfy all three of these "special situation" elements.

    A.    **Special Circumstances Make Attending Depositions In The United States An Undue Burden And Hardship On The Foreign National Plaintiffs.**

"Not in every case is a party seeking pre-trial discovery entitled as of right to a deposition on oral examination at the situs of the forum." *Hyam v. American Export Lines, Inc.*, 213 F.2d 221, 222 (2d Cir. 1954).  A defendant's preference "must be weighed both against his actual, as distinguished from his supposed, need for oral examination at the forum and against the resulting burden to his opponent." *Id.,* at 222-23 (concluding that requiring a plaintiff who resided permanently in Bombay, India to travel to New York for deposition would be so "unusually and seriously burdensome" that it was reversible error for the district court to dismiss the plaintiff's claim when he failed to appear).  The *Hyam* court recognized the unique problems faced by foreign nationals seeking relief in the United States, observing that "[t]he federal courts are open to foreign suitors as to others, and procedural rules are not to be construed in such a fashion as to impose conditions on litigants which in their practical effect amount to a denial of jurisdiction." *Id.*, at 223. See also *Timblo v. Rhode Island Ins. Co.*, 16 F.R.D. 563, 565 (S.D.N.Y. 1954) (requiring a plaintiff to travel from Portuguese India to New

7

York would "impose such a hardship and expense upon the plaintiff as to place the burden upon the defendant of showing that the necessary testimony cannot be secured by written interrogatories"); *Fisser v. International Bank*, 20 F.R.D. 419, 420 (S.D.N.Y. 1957) (vacating notice to take deposition in New York of plaintiff who resided in West Germany where defendant failed to show that the necessary testimony could not be secured by written interrogatories).

As Brazilians, Ecuadorians, Mexicans, Peruvians, and nationals of other countries, some of the Named Plaintiffs cannot always freely travel to the United States. They must first secure a special visa, a process which is often cumbersome, costly and uncertain. To obtain the necessary visa, he or she must travel to the nearest American consulate, which can be hundreds of miles away from home. For the nearly indigent plaintiffs, this sort of travel is difficult to afford, and even if they can afford it, they have to pay additional costs associated with securing the interview. Then a decision is made based on many factors including financial status, property holdings and family ties. There is no appeal or administrative review if the visa is denied and absent receiving the appropriate visa, these plaintiffs would be unable to appear for their depositions in the United States. *Taejon Bristle Mfg. Co. v. Omnex Corp.*, 13 F.R.D. 448, 451 (S.D.N.Y. 1953) (difficulties in obtaining visa are relevant in evaluating protective order motion).

By contrast, the burden on Belfor's counsel of traveling to the foreign countries for depositions, or performing telephone depositions, are modest.

Belfor, by its own advertising, "is the leading company for damage restoration worldwide", doing business in more than a two dozen countries. Belfor's attorneys will be able to easily secure the required travel documents and physically appear in the countries, should Belfor be able to show that an in-person deposition is vital to its case.

> **B.   The *Obando* And *Nava* Plaintiffs, For All Practical Purposes, Had No Choice In Selecting The forum Where Suit Was Filed.**

In determining whether a protective order is warranted, courts have also considered whether a plaintiff had a choice when selecting the particular forum in which to file suit. *Abdullah v. Sheridan Square Press, Inc.*, 154 F.R.D. 591, 593 (S.D.N.Y. 1994) (English plaintiff not required to appear for deposition in the United States because he had no genuine choice of forum, since the defendants were located in the United States, and any English judgment obtained against them might be unenforceable in the United States); *Endte v. Hermes Export Corp.*, 20 F.R.D. 162, 164 (S.D.N.Y. 1957) (Austrian plaintiff filing breach of contract action in New York was not required to appear there for deposition because he "apparently had no choice of forum" because the defendant was subject to jurisdiction only in that state).

The *Obando* and *Nava* Plaintiffs had no real choice of forum, other than a different state within the United States where Belfor would be subject to jurisdiction. However, even filing in a different state would still not solve the problem some of the Named Plaintiffs currently face, because they still would

9

have to incur substantial travel expenses and obtain a special visa to attend a deposition in the United States.

### C. It Would Be Simpler And Fairer To Require The Depositions To Be Taken At Another Location, Or By Another Method.

In evaluating protective order requests under Rule 26(c)(2), some courts have simply tried to determine the simplest and fairest approach to resolve a particular discovery controversy. *Ginsberg v. Railway Express Agency*, 6 F.R.D. 371, 372 (S.D.N.Y. 1945) ("it would be simpler, as well as fairer, to take the deposition of plaintiff at Dallas, Texas, where he lives" rather than in New York); *Lawson v. Mathiasen's Tanker Indus., Inc.*, 21 F.R.D. 314, 315 (D. Pa. 1957) (recognizing the existence of special circumstances and noting the unfairness of requiring the plaintiff to travel from California to Pennsylvania for his deposition).

Here, the information being sought via deposition is primarily information on the jobsites where the plaintiffs have worked. To date, the Named Plaintiffs have provided this information by interrogatory responses, and the depositions, in many cases, have simply been a confirmation or clarification of this information. Plaintiffs do not recall all of the information relevant to the jobsites where they worked and have repeatedly requested from Belfor documentation for the sites where they have worked. Belfor only began providing some information, including timesheets and invoices, on September 14, 2009, via thousands of pages of documents on various CD's. Plaintiffs' attorneys have begun pulling the "project codes" from these files to request from Belfor specific "project files"

10

which are believed to contain most of the information Belfor is asking Plaintiffs to remember. This information is more accurately and more easily available to Belfor in its own documents, or by further written interrogatories to clarify and confirm the information already provided.

Given the logistical difficulties and uncertainty as to whether the Named Plaintiffs will be able to obtain visas to enter the United States, and considering their willingness to submit to telephone depositions, to depositions in their home countries, or to further written interrogatories it would unquestionably be simpler and fairer to conduct discovery by these methods.

**IV.    Sanctions Should Not Be Awarded Against Adaildo Pereira, Agnelio Jurado, Sergio Ferreira de Oliveira Or Any Other Plaintiff Who Is Unable To Attend A Deposition Simply Because He Or She Is Not In The United States.**

As discussed above, the depositions of the foreign national plaintiffs should be required in their home countries, by telephone or through written questions. Imposing sanctions on the foreign national plaintiffs would be inappropriate and unjustified.

**V.    Sanctions Should Not Be Awarded Against Elio Escobar, Because His Failure To Appear Was Caused By A Factor Outside His Control And Was Remedied When He Presented Himself In A Timely Manner to Be Deposed.**

To penalize Mr. Escobar for the unwillingness of Belfor's attorneys to re-schedule his deposition at a mutually convenient time would be inappropriate, especially because a mutually convenient time was available at little added expense. Mr. Escobar could be deposed when the *Obando* Plaintiffs who live in

11

Charlotte, NC are deposed. Plaintiffs' counsel offered to produce Mr. Escobar again at that time; however, Belfor is now suddenly refusing to depose **any** plaintiff outside of New Orleans, LA, and as discussed in Section III above, the Plaintiffs should be allowed to be deposed in a mutually convenient place near where they reside or conduct business.

In the its motion for sanctions, Belfor failed to mention that it agreed to take, and did take, discovery depositions of other Plaintiffs on the same trip to Charlotte, NC. While compelling Mr. Escobar to be deposed in Louisiana would be inappropriate, considering his circumstances, it would also be inappropriate to award sanctions.

Even if sanctions were appropriate, Belfor's costs associated with Mr. Escobar's inability to appear at the originally scheduled time would be minimal. As other depositions of Plaintiffs were being taken that week, Belfor's attorneys had already incurred the costs of travel and lodging. It does not appear that Belfor's attorneys were concerned at the time about Mr. Escobar's non-appearance, because they instead utilized the time for recreational purposes.

**VI.   Conclusion**

For the reasons stated above, the Court is respectfully requested to enter its order:

(a)   vacating its September 1, 2009 Order [Docket No. 585] and allowing Plaintiffs to contest Belfor's inadvertently unopposed August 18, 2009 motion to dismiss Adaildo Pereira and Agnelio Jurado,

(b) granting a protective order requiring the Plaintiffs to be deposed in mutually convenient locations or at their places of residence;

(c) denying Belfor's request for sanctions against the foreign national Plaintiffs who have been unable to appear in the United States for depositions or against Elio Escobar, who appeared late through no fault of his own.

Dated: September 21, 2009

| ROBEIN, URANN, SPENCER, PICARD & CANGEMI, APLC<br>Attorneys for Plaintiffs<br><br>_____/s/ Nancy Picard_____<br><br>2540 Severn Avenue, Suite 400<br>Metairie, LA  70002<br>Telephone:  (504) 885-9994<br>Facsimile:  (504) 885-9969 | PLUNKETT COONEY<br>Attorneys for Plaintiffs<br><br>_____/s/ Mark H. Verwys_____<br><br>333 Bridge St NW<br>Grand Rapids, MI  49504<br>Telephone: (616) 752-4600<br>Facsimile: (616) 752-4607 |

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of September, 2009, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

Dated: September 21, 2009

_____/s/ Mark H. Verwys_____