UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **VALDIR XAVIER, et al** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-0491 c/w**<br>**Ref. 06-7804 & 08-3736** |
| **BELFOR USA GROUP, INC.** | **SECTION "A" (3)** |

**ORDER AND REPORT AND RECOMMENDATION**

Before the Court are defendant Belfor USA Group, Inc.'s Motion to Compel Appearances [Doc. #615], Motion for Discovery Sanctions [Doc. #616], and a second Motion for Discovery Sanctions [Doc. #617]. On September 30, 2009, these three motions came on for hearing before the undersigned Magistrate Judge. Present were Robert Urann on behalf of the Nava and Obando plaintiffs and Steven Griffith, Jr., Erin Pelleteri, and Katie Dysart on behalf of defendant Belfor USA Group, Inc. The Court took the motions under advisement. Having considered the numerous motions, memoranda in support and in opposition, reply memoranda, and the applicable case law, the Court rules as follows.

**I.    Background**

On October 11, 2006, the Obando Plaintiffs filed a Collective Action Complaint under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, against defendants Belfor USA Group, Inc. and Ticos Construction LLC (collectively, "Belfor" or "defendants"). Plaintiffs brought

this original action on behalf of a class of over 100 workers who are predominantly immigrants and who allegedly worked seven days a week, 12 hours a day, restoring and cleaning out buildings and other property contaminated by mold and floodwater post-Katrina.  Belfor employed the plaintiffs – who have limited proficiency in English – as unskilled laborers.  Belfor allegedly used the subcontractor system to intentionally mis-classify them as independent contractors or supervisors to circumvent the overtime provisions of the FLSA.  Plaintiffs further allege that at all times defendants were plaintiffs' joint employers and that plaintiffs are entitled to declaratory judgment that their rights have been violated.  Additionally, plaintiffs seek an award of unpaid wages, an award of liquidated damages, fees and costs.

Seventeen months after the *Obando* action was filed, Mr. Nava (an Illinois resident) filed a near-identical action against Belfor.  Like the Obando plaintiffs, Nava sought to characterize Belfor as the general contractor and his employer.  The Court consolidated the *Nava* action with the *Obando* action on September 10, 2008.  Many of the Obando and the Nava plaintiffs reside outside the continental United States.

## II.     The Parties' Positions

### A.     Belfor's Opening Position

In its Motion to Compel Appearances, Belfor asks the Court to compel the Obando plaintiffs' appearances for depositions in New Orleans, or, alternatively, to face dismissal with prejudice.  This issue has already been before the Court.  On September 1, 2009, this Court granted Belfor's unopposed motion to order two of the Nava Plaintiffs to appear in New Orleans for depositions no later than September 18, 2009.  *See Williams v. Sprint/United Mgmt Co.*, No. 03-2200, 2006 WL

2

1867471, at *3 (D. Kan. June 30, 2006) (holding that generally, "a plaintiff will be required to make himself or herself available for examination in the district in which suit was brought. Since plaintiff has selected the forum, he or she will not be heard to complain about having to appear there for a deposition.").

Belfor asks the Court to dismiss with prejudice any non-compliant Obando plaintiffs. Under Rule 37, Belfor argues, this Court may dismiss a plaintiff with prejudice for failure to appear at a properly-noticed deposition even in the absence of an earlier Court order. Belfor argues that plaintiffs cannot simply refuse to attend a deposition but must seek a protective order, which they have failed to do. Belfor asserts that the conduct of the Obando plaintiffs – in categorically refusing to appear at depositions in New Orleans – is extremely unreasonable given that these plaintiffs proceed against Belfor as individual plaintiffs, which necessitates the depositions to determine the exact nature of each claimant's claim. Alternatively, Belfor, citing *Williams*, 2006 WL 1867471, at *3, asks the Court to order the Obando plaintiffs to appear at depositions in New Orleans pursuant to the reasoning in this Court's September 1 Order. Belfor also seeks its fees and costs.

In its first Motion for Discovery Sanctions, Belfor asks the Court to dismiss with prejudice the claims of Sergio Feriera de Oliveira and Rosy Martinez (Obando plaintiffs) as a sanction for failure to appear at their depositions. Belfor noticed the depositions of Martinez and Oliveira on September 9 and 10, 2009, respectively. Plaintiffs did not appear. Plaintiffs are two of only six Obando plaintiffs that plaintiffs' counsel has agreed to produce. As support for its position, Belfor relies on the same law and arguments as those advanced in its Motion to Compel Appearances.

In the second Motion for Discovery Sanctions, Belfor asks the Court to dismiss Elio Escobar,

Agnelio Jurado, and Adailda M. Pereira (Nava plaintiffs) on the same ground. Belfor noticed the depositions of all plaintiffs to start on July 29, 2009. On July 22, 2009, counsel for plaintiffs e-mailed Belfor to inform them that they did not intend to comply with the deposition notices. Plaintiffs argued that Belfor had to travel out of the country to take the depositions of Jurado and Periera (Ecuador and Brazil, respectively). Neither plaintiff filed for a protective order. On September 1, 2009, this Court ordered these two plaintiffs to appear in this forum for their depositions no later than September 18, 2009. [Doc. #585]. Counsel for plaintiffs consented to Belfor's motion. Counsel for plaintiffs later informed Belfor that they would not produce plaintiffs in Louisiana nor would they consent to a dismissal with prejudice.

Escobar agreed to appear for a deposition on Monday, August 3, 2009 in Charlotte, North Carolina. Escobar did not appear, calling plaintiffs' counsel later that day to report that he had lost his cell phone. Belfor attempted to depose him on Tuesday or Wednesday of the same week, but the time constraints of the depositions of other name plaintiffs did not allow time for his. Belfor allegedly agreed to stay one more day in Charlotte, but plaintiffs' counsel allegedly were unable to accommodate. Belfor asked plaintiffs to reimburse them for travel expenses to take Escobar's deposition, but plaintiffs' counsel refused. Belfor relies on all of its earlier legal arguments, stressing that the depositions of these plaintiffs are necessary because they are the representative plaintiffs. In addition to its request for fees and costs, Belfor seeks reimbursement of the fees to travel to Charlotte where Escobar failed to appear for his deposition.

**B.    The Nava and Obando Plaintiffs' Response**

Plaintiffs filed a consolidated memorandum in opposition to all three of Belfor's motions.

4

Ultimately, plaintiffs argue that they should not have to appear in Louisiana due to financial and practical constraints and their availability in their home countries for telephonic depositions.

With regard to Oliveira, for example, plaintiffs claim that when Belfor noticed his deposition, he had already returned to Brazil and was unable to secure the necessary documents and funding to return. Plaintiffs do not discuss Martinez's failure to appear.

Plaintiffs also claim that Pereira and Jurado reside outside of the country, do not have sufficient travel funds, and could not secure the necessary visa and travel documents in time to appear for a deposition on September 18, 2009. Counsel states that she did not oppose the motion to compel appearances – which prompted this Court's September 1 Order – because she misunderstood which plaintiffs were at issue (on the same date, District Judge Zainey approved this Court's Report and Recommendation and dismissed the claims of three other Nava plaintiffs). With regard to Escobar, plaintiffs argue that he was willing to stay all night in Charlotte to finish his deposition but that Belfor allegedly refused to even start it after the deposition of another named plaintiff.

Plaintiffs argue that while the general rule would require depositions in this forum, courts have allowed deposition by other means in three situations: (1) When compelling in-person depositions would be burdensome or cause the plaintiff undue hardship; (2) When the plaintiff had no choice in selecting the forum; or (3) When it would be simpler or fairer to take the deposition at another location or use another form of discovery. Plaintiffs argue that they satisfy all three situations.

First, plaintiffs argue that a party's preference to depose in a forum must be weighed against

his actual – as opposed to his supposed – need to depose in the forum and against the resulting burden to the opponent.  As support for this proposition, plaintiffs cite to Second Circuit and New York District case law.  Plaintiffs note that they are Brazilians, Ecuadorians, Mexicans, Peruvians, and nationals of other countries who cannot always easily and freely travel to the United States.  For example, plaintiffs allege that, to obtain a visa, the foreign national must travel to the American consulate – costly in itself – and then pay to obtain an interview, after which a visa is not always issued (depending on financial status, property holdings, and family ties).  Plaintiffs maintain that the burden on Belfor to travel is modest, given that – by its own advertising – it "is the leading company for damage restoration worldwide."

     Second, plaintiffs argue that they had no real other choice for the particular forum, except for another state.  As they are foreign nationals, a forum in another American state would not solve the problems raised above.

     Lastly, plaintiffs maintain that courts have simply tried to fashion the simplest and fairest remedy in these circumstances.  They note that here, the information sought is primarily on the job sites where plaintiffs worked.  They assert that this information has been provided through interrogatories and that the depositions have simply been a confirmation or clarification of this information.  Plaintiffs argue that this information is more readily available to Belfor through its "project files" because plaintiffs have forgotten most of the information.

     Plaintiffs ask the Court not to sanction Escobar because he failed to appear through no fault of his own and even appeared in a timely manner later to be deposed.

     Plaintiffs ultimately ask the Court to (1) vacate its earlier September 1, 2009 Order; (2) grant

a protective order and require that plaintiffs be deposed in mutually convenient locations or at their places of residence; and (3) deny sanctions.

### C. Belfor's Reply

Belfor argues that this Court should deny plaintiffs' request to revisit its September 1 Order because (1) their position that they were confused is disingenuous, and (2) it is untimely. Belfor notes that plaintiffs' counsel opposed the dismissal of the three earlier plaintiffs and even attended the hearing to argue against sanctions. This Court then recommended that the three plaintiffs be dismissed with prejudice. Later, and after *this* Court's ruling, Belfor filed the motion to dismiss Jurado and Pereira. On September 1, 2009, this Court contacted plaintiffs, who represented no opposition to the motion, and this Court thus ordered Jurado and Pereira to appear here for a deposition before September 18. [Doc. #585]. *On that same date*, Judge Zainey accepted this Court's recommendation to dismiss the three earlier plaintiffs. Belfor also argues that the request to revisit the September 1 Order is untimely under Rule 59 because it was not filed within 10 days of this Court's Order, and plaintiffs have wholly failed to demonstrate a manifest error of law or fact or newly discovered evidence. Fed. R. Civ. P. 59(b); *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005).

With respect to the depositions, Belfor argues that all fifty-seven Obando plaintiffs *voluntarily submitted* themselves to this Court as plaintiffs in March of this year, and the eight Nava plaintiffs agreed to do so as well. Belfor challenges the select Second Circuit and New York cases from the 1940s and 1950s cited by plaintiffs. Belfor argues that the cases cited by plaintiffs are distinguishable because they involved a single plaintiff and that there is no legal support for the

proposition that a defendant must travel to numerous foreign countries – bearing all costs at the same time. Belfor further cites this Court to more recent law to support in-person depositions in the forum (cited by this Court in its September 1 Order). Belfor argues that plaintiffs fail to meet their burden here because, to demonstrate undue hardship or compelling circumstances, each plaintiff must present an affidavit with specific – and not blanket claims – of undue hardship.

Belfor notes that plaintiffs have not proposed any plan to depose plaintiffs by telephone – which will be costly in and of itself, given the locations, court reporters, interpreters, and difficulty using documents as exhibits. Indeed, Belfor quotes deposition testimony to demonstrate why in-person depositions are necessary here. The testimony demonstrates the past history of discrepancies between written responses and live testimony, a discrepancy recognized by one of plaintiffs' counsel himself.

### III.    Analysis

For the following reasons, the Court grants the Motion to Compel Appearances [Doc. #615] and orders plaintiffs to appear no later than **November 30, 2009** for their depositions in this forum. This Court has ordered plaintiffs to appear here before, and nothing in the plaintiffs' memorandum in opposition convinces the Court that its earlier ruling is unsound. The Court recognizes that there is case law to support both parties' positions. While Belfor is correct that a plaintiff should be deposed in the forum in which he has chosen to sue, plaintiffs are also correct that courts in the past have weighed the party's preference to depose at the forum against (1) the actual need for oral examination at the forum, and (2) the resulting burden to the opponent. *Hyam v. Am. Export Lines, Inc.*, 213 F.2d 221, 222-23 (2nd Cir. 1954). Moreover, the Court recognizes that courts have often

considered whether the deposition may be taken – at least in the first instance – via written interrogatories. *Id.*; *Fisser v. The Int'l Bank*, 20 F.R.D. 419, 420 (S.D.N.Y. 1957) ("The respondent has not shown that the necessary testimony cannot be secured by written interrogatories."); *Timblo v. R.I. Ins. Co.*, 16 F.R.D. 563, 564-65 (S.D.N.Y. 1954) (rejecting oral deposition at forum when party failed to prove that necessary testimony could not be obtained through interrogatories especially when parties had agreed to obtain evidence by that means). However, Belfor has already propounded interrogatories to plaintiffs in this suit, and Belfor has adequately demonstrated to this Court that discrepancies have existed before between written responses to interrogatories and a plaintiff's live testimony. In addition, the case law cited by plaintiffs is distinguishable from the underlying factual circumstances as they involved one (or two) plaintiff(s). Here, given the numerosity of plaintiffs, Belfor would have to travel to approximately six countries to depose all representative or individual plaintiffs. Moreover, the Court finds that generic and naked assertions by plaintiffs' counsel of undue hardship are inadequate – plaintiffs should have submitted affidavits with specific evidence of such hardship. *Cobell v. Norton*, 213 F.R.D. 43, 47 (D.D.C. 2003); *Dalmady v. Price Waterhouse & Co.*, 62 F.R.D. 157, 159 (D.P.R. 1973) ("It is not sufficient that plaintiff's attorneys make naked assertions with respect to the financial and hardship conditions faced by him. Well prepared and complete affidavits on his part are necessary to corroborate and give substance to his attorneys' assertions."). Plaintiffs have not met this burden here. While the Court sympathizes with plaintiffs and recognizes their claims of financial hardship, the Court finds that Belfor has the stronger position under the case law and cannot ignore that plaintiffs voluntarily submitted themselves to the jurisdiction of this forum. *Williams*, 2006 WL 1867471, at *3.

Based on the case law quoted in its September 1 Order [Doc. #585], the Court grants the first Motion for Discovery Sanctions [Doc. #616] and recommends that Rosy Martinez and Sergio Ferreira De Oliveira be dismissed with prejudice for failure to appear at their depositions on September 9 and 10, 2009, respectively.[1]

For the same reasons, the Court grants in part and denies in part the second Motion for Discovery Sanctions [Doc. #617] and recommends that Agnelio Jurado and Adaildo Pereira be dismissed with prejudice for failure to comply with this Court's September 1 Order.  This Court denies plaintiffs' request to revisit the September 1 Order as untimely and for having failed to meet their burden under either Rule 59 (or even Rule 60).  *See Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005).

However, the Court denies the second Motion for Discovery Sanctions as to Elio Escobar, whom the Court finds made a good faith effort to attend his deposition.   The Court orders Elio Escobar to appear in this forum for his deposition **no later than November 30, 2009**.

The Court also denies Belfor's request to recover its fees to take Elio Escobar's deposition. Belfor's counsel was traveling to North Carolina to depose other named plaintiffs in this suit, and one extra night in a hotel room is not going to cause financial hardship. The Court also denies Belfor's requests for fees and costs for these motions on the ground that plaintiffs had a substantial justification for objecting to the deposition notices.  *See* Fed. R. Civ. P. 37(b)(2)(C) & (d)(3).

---

[1]  Plaintiffs never addressed Martinez's failure to appear.

**IV.     Conclusion**

For the foregoing reasons, the Court grants the Motion to Compel Appearances [Doc. #615] and the first Motion for Discovery Sanctions [Doc. #616].  The Court also grants in part and denies in part the second Motion for Discovery Sanctions [Doc. #617], as outlined above.

New Orleans, Louisiana this 2nd day of October, 2009.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**